Helen Davis v. Commissioner.
Davis v. Commissioner
Docket No. 17673.
United States Tax Court
1950 Tax Ct. Memo LEXIS 234; 9 T.C.M. (CCH) 263; T.C.M. (RIA) 50074; March 29, 1950
*234 Burns Poe, Esq., 1004 Puget Sound Bldg., Tacoma, Wash., for the petitioner. Douglas L. Barnes, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency of $24,785.31 in petitioner's income tax for 1943. The year 1942 is involved by reason of the Current Tax Payment Act of 1943. The deficiency results in principal part, and insofar as it is here contested, from an adjustment which the Commissioner made in the opening inventory of petitioner's merchandising business for the period September 1 to December 31, 1943, following her purchase of her estranged husband's partnership interest in the business. Some of the facts have been stipulated and are found accordingly. Findings of Fact Petitioner is a resident of Tacoma, Washington. Her returns for the taxable years 1942 and 1943 were filed with the collector of internal revenue for the district of Washington. The petitioner is president of a corporation which operates a chain of women's ready-to-wear clothing stores under the firm name of "Helen Davis." She established the business in 1938 and operated it as sole proprietor until May 3, 1941, when it *235 changed to a partnership under an agreement entered into by her and her husband, Frank J. Johnson. Petitioner and Johnson were married February 2, 1939. He took no active part in her merchandising business but from time to time advanced money and credit for use in the business. Marital differences developed between them and on May 3, 1941, they entered into an agreement, effective as of May 1, 1941, purporting to be a "full and complete settlement of any and all of their property interest both separate and community." This agreement provided in part as follows: "WHEREAS, it is stipulated by the parties hereto that certain of their community interest in the chain of "Helen Davis," women's apparel shops, are in actual fact separate interests by reason of the initial venture being started before coverture, with the initial idea of the said business to be operated and controlled by first party, with second party simply to be a financial backer; that, nevertheless, for the purpose of this agreement it will be considered that all of the business of the 'Helen Davis' shops is community property * * *. "NOW, THEREFORE, the parties hereto contract and agree as follows: That the entire *236 business venture now operated under the name of 'Helen Davis' and consisting of five units together with a lease for a sixth unit to supplant the present Tacoma unit, is, by this agreement, to be removed from its community status and to become the separate property of the parties hereto, under the following division and terms, to-wit: "1. First party and second party shall become co-partners in the conduct of this business only upon the following terms and limitations: "(A) The first party shall be the sole manager and operator in the conduct of this said business, with full control in any and every sense, except that she may not make a capital sale or dissipation of any unit without the consent of second party, but there shall be no restriction upon her as to policy, personnel, merchandising, or any other phase of management. The interest of second party shall be solely to receive back his capital investment, plus future profits, which said capital investment is set up and agreed to as of this date to be in the sum of Thirty-three Thousand, Five Hundred and Fifty Dollars ($33,550.00), without interest. "(B) This contract contemplates and agrees that all of the net profit from *237 this business shall be applied to the retirement of this said indebtedness of $33,500.00, and, if at the conclusion of the term of the longest instant lease, being, or believed to be, approximately five years from July 15, 1941, this entire amount has been paid to second party by this accumulation of net profit which shall be placed in a capital reserve for that purpose, then the business shall become the sole and separate property of first party, under the terms hereinafter set out. "(E) It is stipulated that the net worth of the said business at this time is Twenty-one Thousand ($21,000.00) Dollars, and that first party shall have this as her sole and separate property at the end of this five year period, and that the net worth of the business at that time above and beyond this said $21,000 shall be divided equally between the parties hereto; provided, that unless this business is dissolved and these funds realized and paid upon this basis at the option of first party, she may either within a period of sixty days pay off the interest of second party in this business, or she may elect to have second party continue this proportional interest in the business and, thereafter, second *238 party shall be entitled to any dividend or profit on that basis, but he may not withdraw his interest from the business until the ultimate dissolution or sale of the business by first party, it being stipulated that this proviso shall bind the heirs or successors of second party. "(F) Second party agrees not to withdraw his financial support presently extended to this business within the period of this five-year agreement, and to continue the use of his present extended line of credit." It was further provided in the agreement that during the life of the contract petitioner should be entitled to a salary of $250 per month, plus reasonable traveling expenses. This agreement was incorporated in an interlocutory order issued September 2, 1941, in a divorce suit brought by the petitioner in the King County Superior Court at Seattle, Washington. A final decree of divorce was entered by the court on May 23, 1942. After the agreement of May 3, 1941, the merchandising business was continued under the sole management of the petitioner. A partnership return was filed in the name of "Helen Davis" for the calendar year 1941. That return showed gross receipts from the business of $247,589.83 *239 and distributable income of $21,032.17. The profits up to the effective date of the partnership agreement were allocated to petitioner and those for the remainder of the year were shown as divided equally between her and Johnson. Petitioner's share was $16,182.05 and Johnson's $4,850.12. The 1942 return howed receipts from business of $389,222.92 and net profits of $56,332.32, divided equally, after petitioner's salary of $3,000, between the partners. The 1943 return, filed November 5, 1943, covered the period January 1 to August 31, 1943, inclusive. It showed gross receipts of $367,524.89 and net profits of $61,992.80 which, after deduction of petitioner's salary of $2,000 were allocated to the partners in equal amounts of $29,996.40 each. In the fall of 1942 Johnson petitioned the Superior Court of Pierce County, Washington, for an accounting of partnership profits and for the appointment of a receiver for the "Helen Davis" business. This petition was dismissed. The court entered its findings of fact and conclusions of law March 4, 1943, finding that a valid partnership had been entered into by the petitioner and Johnson under the agreement of May 3, 1941, and that the partners *240 were bound by the terms of that agreement, as subsequently modified by them. It directed that the profits of the partnership business be set aside in a separate account until a fund of $33,550 had been accumulated for repayment of Johnson's advances to the business but that this money was to be withheld and used in the business until termination of the five year period specified in the May 3, 1941, agreement, unless the parties should otherwise agree. The court further directed that the income taxes of both partners on income derived from the partnership business should be paid out of partnership earnings and charged as partnership expenses. In September 1943, the petitioner and Johnson entered into a further agreement by which the petitioner purchased his interest in the business for a cash sum of $50,000. This agreement provided in part as follows: "The parties hereto, as co-partners, have since May 3, 1941, been the owners of certain ladies' apparel shops known as the 'Helen Davis' shops. * * *
"1. Second party does hereby sell and convey unto first party his entire interest in the co-partnership known as the 'Helen Davis' shops, which is more particularly set forth in *241 that certain Community Property Settlement of May 3, 1941, entered into between the parties hereto, and the first party does hereby purchase from second party his entire interest in said co-partnership for the sum of Fifty Thousand ($50,000.00) Dollars paid in cash in connection with the execution of this agreement. The payment of this amount shall include the sum of Thirty-Three Thousand Five Hundred Fifty ($33,550.00) Dollars, which has heretofore been advanced by second party to said co-partnership business referred to in paragraph (A) of said agreement of May 3, 1941. Said sum shall further include any and all accumulated and undivided profits and other moneys of every kind and nature to which second party may be entitled under and by virtue of the co-partnership agreement, it being the intent hereof that the payment of said sum of Fifty Thousand ($50,000.00) Dollars shall be considered as a final payment and adjustment of the interest to date of second party in said co-partnership, except as is further provided for herein. * * *
"3. Effective as of September 1, 1943, the co-partnership which has heretofore existed between the parties hereto relating to the said 'Helen Davis' *242 shops, shall be dissolved, and said entire business shall become the property of the first party, Helen Davis Onge, as of said date. * * *" In addition to the $50,000 mentioned in the agreement petitioner agreed to pay, and did pay, to Johnson $5,475.82, representing the two remaining quarterly income tax payments on his share of the partnership profits for 1942. The capital account of Johnson in the Helen Davis partnership as of August 31, 1943, as determined by an examining revenue agent, was $87,605.67, made up of the following items: Original investment May 3, 1941
$33,550.00
1941 partnership profits
2,279.61
1942 partnership profits
28,257.62
1943 partnership profits
29,996.40
Profit from sale of automobile
37.64
Total
$94,121.27
Less: Withdrawals
Attorney fee in divorce
$ 150.00
Withdrew for income tax during 1942
822.53
Withdrew for income tax prior to July 1943
5,475.82
Contributions, 1943
67.25
Total
$6,515.60
6,515.60
Balance August 31, 1943
$87,605.67
In determining the deficiency herein the Commissioner reduced petitioner's opening inventory of September 1, 1943, by $32,129.85, the difference between the amount *243 of Johnson's capital account and the $55,475.82 which petitioner paid to him in acquiring his interest in the partnership business. That adjustment reduced the September 1, 1943, inventory from $155,666.56, as shown in petitioner's 1943 return to $123,536.71. It is stipulated that: "The income of the business known as Helen Davis as determined by respondent in the deficiency letter for the calendar year 1942, the period ended August 31, 1943, and the period ended December 31, 1943, is not contested by petitioner, except insofar as petitioner contends that the increase to income by reason of an adjustment to "cost of goods sold" in the amount of $32,129.85 for the period ended December 31, 1943, is incorrect." Opinion Lemire, Judge: Although the controversy here is confined to the inventory adjustment above-described, we have set out in our findings of fact as much of the background of the controversy as the evidence affords. It might be noted at this point that there is also before us a related proceeding brought by Frank J. Johnson for the same taxable year. While the controversy in each case stems from the same set of facts, consolidation of the proceedings was opposed *244 by counsel for the petitioner because of the adversity of the interests of the taxpayers. We find on the evidence in this case that a valid partnership was formed by petitioner and Johnson under the agreement of May 3, 1941, for operation of the business known as "Helen Davis". This was the intention of the parties at the time the agreement was entered into and it was so determined by the Superior Court of Pierce County, Washington. The partnership agreement states that "The interest of second party [Frank J. Johnson] shall be solely to receive back his capital investment, plus future profits." It is not specified what percentage of the profits each partner was to receive but in the partnership books and in the returns which it filed for 1941, 1942, and 1943 the profits were shown as belonging to the partners in equal shares. This, apparently, was the intention of the parties and the effect of the partnership agreement. The only matter in dispute in this proceeding is the adjustment which the Commissioner made in petitioner's opening inventory at September 1, 1943, following the dissolution of the partnership. What the Commissioner did was to reduce the book inventory of $155,666.56, *245 based on cost, by $32,129.85, being the difference between Johnson's capital account with the partnership and the amount which petitioner paid him for his partnership interest. We can see no reason whatever for such an adjustment. The $32,129.85 was the amount of Johnson's loss on the sale of his partnership interest. It had nothing to do with the inventory or the basis to petitioner of any of the partnership assets. Johnson's capital account was made up of his original investment in the partnership, plus his undistributed share of the partnership profits. It is apparent that petitioner's purchase of Johnson's interest in the partnership gave her a new interest in, and a new cost basis for, the partnership assets which she thus acquired. See . In the absence of evidence that would support any more satisfactory method of making the adjustment that new basis may be determined by an allocation of petitioner's cost proportionately to the separate assets in the ratio of cost to book value. The action of the Commissioner in making such an adjustment was sustained by us in the Nathan Blum case, supra, where the facts were almost identical with those in *246 the instant case. The petitioner cites that case in her brief in support of her alternative contention that the Commissioner should make an allocation in the instant case, with which we agree. The balance sheet at August 31, 1943, is in evidence as a part of the stipulation of facts. This and the other stipulated facts seem to contain all of the figures needed for an allocation, such as was made in the Blum case. Having made this allocation, the parties should be able to agree on a redetermination of petitioner's tax liability under a Rule 50 computation. Decision will be entered under Rule 50.